### Stearns Coal & Lumber Company v. Williams.

(Decided November 13, 1917.)

### Appeal from McCreary Circuit Court.

1. Trial—Consideration of View or Inspection.—While trial courts may permit or require the physical examination before the jury of one of the parties, or to enable a physician to testify concerning his condition, yet it is not always the case that this may be claimed as a matter of right to the other party of applying a test to his opponent when to do so might endanger the health or physical condition of the one upon whom the test is performed.

2. Trial—Evidence.—Objections to testimony as a whole where parts of it are competent will not be sufficient to entitle the objector to complain of the admission of that which is competent.

3. Continuance—Affidavit as to What Absent Witness Would Testify.—After a trial court has overruled a motion for a continuance based upon the absence of a witness and the filing of an affidavit as to what his testimony would be upon condition that the affidavit might be read as the testimony of the absent witness, it was error

not to permit competent and relevant portions of the affidavit to be read to the jury as the testimony of the absent witness.

4.  New Trial—Argument of Counsel—Evidence.—Attorneys should not get before the jury irrelevant and incompetent facts, either through the asking of questions or argument to the jury, and while in some cases a withdrawal of the question or the argument if improperly indulged in will suffice, where the facts thus gotten before the jury are so palpably erroneous and prejudicial as to almost certainly influence the jury, it is not sufficient to sustain an objection or enter a withdrawal, but the court should in such cases grant a new trial or discharge the jury and continue the case.

WILLIAM WADDLE and O. H. WADDLE & SONS for appellant.

DENTON & FLIPPEN, H. C. GILLIS and J. V. SNYDER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee, plaintiff below, was employed by appellant, defendant below, in the capacity of electrician with the duties to look after, repair and keep properly equipped the defendant's electric wires used in and about its mines for both illuminating purposes and for furnishing of motor power to its machinery. Plaintiff was working in that capacity under a superior foreman, whose name was Carter, and on October 19, 1911, he went upon one of the poles carrying both illuminating and motor power wires for the purpose of doing some work to the lighting wires as directed by his foreman, and while so engaged he came in contact with the wires conducting the current for motor purposes and sustained a shock, as well as a slight burn upon one of his hands and a small place on his back. About nine months thereafter, during which time he continued to work for the same wages, he brought this suit to recover damages for his injuries upon the ground that the defendant was negligent in failing to furnish him a safe place in which to work and in directing him to work at an unsafe place when the defendant knew it to be unsafe, or could have known it by the exercise of ordinary care, and that plaintiff did not know it, it being further charged that defendant with gross negligence turned the current upon the motor power wires after knowledge that plaintiff was either upon the pole or was going upon it to do the work assigned to him.

A general denial with a plea of contributory negligence in failing to obey instructions constituted the an-

swer and upon trial a verdict was returned for the plaintiff, upon which judgment was rendered, and on appeal to this court it was reversed in an opinion rendered in 164 Ky. 618. A second trial resulted in a like verdict and judgment, which was reversed in an opinion reported in 171 Ky. 46. Upon a return of the case on a third trial the plaintiff was again successful, obtaining a verdict for one thousand dollars, upon which judgment was rendered against the defendant, and its motion for a new trial having been overruled, it brings the case to this court for the third time.

Upon the first appeal the reversal was had because of error in instructions given to the jury, and upon the second appeal the judgment was reversed because the court failed to give an instruction presenting in concrete form the defense relied upon by the defendant. In the present appeal several grounds for reversal are urged, which will be considered during the progress of this opinion.

It is insisted that the court erred in permitting Doctors Harmon and Cain, witnesses on behalf of plaintiff, to give their opinions as to the plaintiff's present condition, and as to the probable cause thereof, based, as it is contended, upon what plaintiff stated to the witnesses when he was examined by them long after the accident and with a view of giving their testimony in the case. In substantiation of this contention we are referred to the cases of C. & O. Ry. Co. v. Wiley, 134 Ky. 461; John H. Radel Co. v. Borches, 147 Ky. 512, and cases of like import, in which it is held in substance that a party may not while not under oath make statements favorable to his case and upon the trial introduce a witness, even a physician, to prove such self-serving statements. This upon the all sufficient ground that such a course would be but an indirect way of getting before the jury not only hearsay testimony, but what might be testimony manufactured by the party for the purpose of bolstering up his lawsuit. The cases relied upon, however, do not go to the extent of disallowing to a physician the right to obtain a history of the patient's case and to form an opinion therefrom which he may give in his testimony upon the trial. The rule only forbids such witness from testifying to the matters and things which the party stated to him concerning the case, and we fail to find that the testimony of the two physician witnesses of which complaint is made comes within the prohibitive

rule as laid down in the cases relied upon. But, however that may be, we fail to find that exceptions were taken to the testimony complained of. In the case of the witness Harmon no exception was taken except to one answer, which the court sustained, and as to the witness Cain, the only objection was to the action of the court in overruling a motion to exclude his entire testimony, a large part of which is clearly competent. Such an objection is not sufficient to entitle the party making it to relief against incompetent portions of the testimony, as has often been determined by this court. Stewart's Admr. v. L. & N. R. R. Co., 136 Ky. 715, and Harrod v. Armstrong, 177 Ky. 317, and cases therein referred to.

It is further complained that the court refused to permit an expert electrician while giving his testimony to make an experiment upon the plaintiff and to show that the volume of electricity which other evidence showed was passing through the wires with which plaintiff came in contact at the time of the accident could be withstood by plaintiff without any injurious results. We do not think the court erred in declining to permit the experiment made. It is true that it has been held by this court, and it is now an acknowledged rule within this jurisdiction, that parties litigant may be subjected to physical examinations, and within reasonable bounds tests may be made for the purpose of demonstrating the truth or falsity of an issue made in the case, but such practice is not only a matter largely within the sound discretion of the trial court, but it may not be demanded as a matter of right where there is a reasonable probability of its endangering the health or safety of the person upon whom it is proposed to be made. While in this case the expert witness was positive that no injurious results would happen, yet it was the very contention of the plaintiff that such injuries did result, and to recover for which he filed his suit. Moreover, upon the last trial the witness was permitted to testify that in one of the former trials he had made the experiment upon plaintiff insisted upon with no evil effects resulting therefrom. We think under the circumstances the court was not in error in declining to permit the experiment to again be made.

It is also insisted that the court erred in refusing to permit a part of the affidavit made for a continuance to be read as the testimony of William Carter, who was absent, and who was the defendant's foreman at the time of the accident and who plaintiff claims at that time was

vice-principal to the defendant, and on account of whose negligence it, is sought to hold the defendant liable.

From the record it appears that shortly after the accident the foreman, Carter, quit the employ of the defendant, and his whereabouts since that time has been unknown to it. The mandate issued upon the reversal of the last judgment was filed in the court below on July 29, 1916, and the case was called for trial on August 21, 1916, less than one month thereafter. It appears that at one time the deposition of Carter was taken upon interrogatories, but it had become lost from the papers and there was no copy of it in existence. A short while after the last reversal of the case the defendant began a search for the purpose of locating the foreman, Carter, and on Saturday before the trial was to commence on Monday received information that he was at a point in the state of Texas, and when the case was called an affidavit was filed setting forth the facts claimed to constitute diligence and what the witness would testify to if present, and that if the case were continued defendant could locate Carter as it believed and could and would procure his deposition by the next term of the court. The defendant therefore moved to continue the case for the purpose of getting the testimony of the absent witness, but the plaintiff objected, his objections were sustained and the motion to continue was overruled, but "the court thereupon announced that the affidavit could be read upon the trial of the case."

When the affidavit was offered as the testimony of Carter the court admitted part of it to be read to the jury, but declined to admit other parts of it, to which the defendant excepted and thereupon moved to discharge the jury and continue the case, which motion was overruled and defendant again excepted. The part of the affidavit which the court declined to permit the defendant to read to the jury is "that he (Carter) would further testify and the same would be true when stated, that the plaintiff Williams performed the same kind and character of labor after the accident complained of that he did before; that he made no complaint to him of any injuries or the results thereof; that he could not detect any decrease in weight or physical condition of plaintiff after the accident he complains of, but that said Williams to all appearances was in good physical condition; that he worked as he had previously done, doing the same class of work; that he (Carter) did not tell the plaintiff, Williams, that the work on the line was safe,

or that everything was all right, and that he did not tell him there would be no danger, and did not promise or agree to give the plaintiff a raise in salary; that if the plaintiff, Williams, had followed his instructions and used insulated pliers he could not have been hurt."

The affidavit was made by an agent and representative of the defendant, who had charge of the preparation of the case on its behalf, and whose duties seem to have been largely if not entirely to look after such matters, and we think he was a proper agent to make the affidavit; we are furthermore of the opinion that due diligence was shown in an effort to locate Carter in order to procure his personal attendance, if possible, or, if not, to take his deposition. However this may be, the court had overruled the motion to continue the case, not because the affidavit therefor was insufficient, but because the court gave defendant the benefit of it by ordering that it might be read as the deposition of the absent witness. It did not then lie in the mouth of plaintiff to raise the question of the sufficiency of the affidavit when it was offered in evidence, as that question was settled and we think rightfully. The only objection which plaintiff could then make would be one to the competency and relevancy of the testimony of the absent witness as incorporated in the affidavit. That part of the affidavit which we have quoted, and which the court declined to admit, went to the very gist of the defense. Part of it bore upon the extent of plaintiff's injuries, which was an issue in the case. Other parts related to the safety of the place where plaintiff was at work when he received his injuries, and other parts of it denied the very allegations of negligence upon which plaintiff based his right to recover. Just why the court, after overruling the motion for a continuance, declined to admit the part of the affidavit which we have copied is nowhere shown in the record except by a statement of counsel that it was thought to be cumulative to other parts of the affidavit or to the other testimony given in the case, but an examination of the entire affidavit itself shows that there were statements in the rejected part not contained in the part that was admitted, and if the rejected part was cumulative to testimony given by other witnesses, this would not furnish a legal reason for its rejection, because there was no limit placed upon the number of witnesses which either side might introduce upon any particular point. If there had been, however, we find that no witness testified to some of the facts stated in the rejected part of

the affidavit, because Carter himself was necessarily the only one who knew whether he was guilty of the things which plaintiff relied upon as constituting negligence. It requires no argument to convince us that it was greatly prejudicial to the substantial rights of the defendant to reject the part of the affidavit which the court excluded.

During the examination of the plaintiff, his attorney asked him this question, "Did your back get any better after the other two verdicts you got in this case?" The court sustained an objection to the question and would not permit the plaintiff to answer. However, the asking of the question served the purpose to get before the jury the result of former trials of the case. During the closing argument of the case before the jury plaintiff's counsel said: "They say as soon as he gets a judgment his condition will be relieved; why, gentlemen, he got a judgment back there, and it never helped his condition any." To this statement objections were made and the court sustained them, but this statement likewise forcefully brought before the jury the fact that another jury or juries, composed of the fellow citizens of the jury then sitting, had found the issues in favor of plaintiff. It cannot be insisted that either the question propounded to the plaintiff or the statement made by the counsel in argument has any legitimate place in the record, and it cannot be denied that the only effect that either of them could have was to prejudice the jury in favor of plaintiff and possibly cause it to render a verdict which it might not otherwise do, or to return an amount larger than might have been returned had the statements not been made.

One of the grounds permitting a new trial contained in section 340 of the Civil Code is "misconduct of the jury, of the prevailing party, or of his attorney." This court in many cases has had this ground for a new trial before it for consideration. More frequently than otherwise it occurs in the argument of the case before the jury, and it has uniformly been held that it was highly improper to go out of the record of the particular trial in order to place before the jury irrelevant, incompetent and prejudicial facts. In the case of Owensboro Shovel & Tool Co. v. Moore, 154 Ky. 431, where the attorney in his closing argument to the jury made statements not borne out by the record, this court, in passing upon such conduct, said:

"We have so often held that trial courts should not permit attorneys, in the presentation of their client's case, to make statements not supported by the record, that it would seem almost unnecessary to repeat it here. We have likewise held that where counsel persists in violating this rule and recovers a verdict, he should be deprived of the fruits of victory thus earned by having the verdict set aside and a new trial awarded. If trial courts would rigidly enforce this rule and promptly set aside verdicts in cases where lawyers had, in argument, over the objection of opposing counsel, made prejudicial statements not supported by the record, lawyers would cease offending in this particular. Laxity tends to encourage rather than discourage this practice of indulging in too wide a range on the part of counsel in the presentation of their cases. It should not be tolerated. When a lawyer makes a statement of fact wholly unsupported by the record the trial court should, without waiting for objection to be made, promptly reprimand the lawyer and instruct the jury to disregard the statement, and where he regards it of such a prejudicial nature that it may improperly influence the jury, he should set aside any verdict obtained in favor of counsel so offending."

Again, in the case of L. & N. R. R. Co. v. Allen's Admr., 174 Ky. 736, we said on this point:

"We fully realize that counsel in arguing the case should confine himself to the testimony introduced or reasonable deduction to be drawn therefrom. That he should say nothing unless authorized by the record which would be calculated to induce the jury to return a verdict not the result of its fair and unbiased consideration of the testimony heard and the instructions given."

This court, in the very recent case of City of Covington v. Elizabeth M. Faulhaber, 177 Ky. 623, had occasion to consider the exact question here presented, and in condemning the practice of referring to former trials of the same suit, said:

"What was done in former suits, or in this suit on a former trial, had no competent or relevant bearing on the case at this trial, and it should have been heard and disposed of as an independent action without regard to anything that happened in previous suits, or in this suit on a former trial."

There could scarcely be imagined a case where the character of statements complained of would be more prejudicial and of more poisonous effect than those which we find in this case, and of which complaint is made. Nor

do we find anything which defendant's counsel did to either authorize the asking of the question complained of or the statement of counsel in his closing argument. The purpose intended is clear to our minds, and, as stated in the Owensboro Shovel & Tool Company case, *supra,* the successful party "should be deprived of the fruits of victory thus earned by having the verdict set aside and a new trial awarded."

It is insisted, however, that the court sustained an objection to the complained-of question, as he did also to the statement of counsel made in argument; but this is not in all cases sufficient to render a verdict obtained in the case free from being set aside and a new trial granted. The prejudicial effect of the matter objected to may be so far reaching that the sustaining of an objection thereto and even an admonition to the jury by the court will not be sufficient to cure the consequences of the impropriety complained of. It was so held in the case of London, Liverpool & Globe Insurance Co., &c., v. Wright & Allen, 158 Ky. 290, wherein this court, in discussing the precise point under consideration, said:

"We have held that when a lawyer makes a statement of fact wholly unsupported by the record, the trial court should promptly reprimand him, and instruct the jury to disregard the statement. Ordinarily this will be sufficient, but where the statement is of such a prejudicial nature that it may improperly influence the jury, the trial court should set aside any verdict obtained by the counsel so offending."

We do not deem it necessary to further elaborate the question, except to state that trials in the court house should be conducted in as fair and impartial a manner as it is humanly possible to attain, and courts should not hesitate to grant new trials, or to set aside the submission and order the case continued whenever any method of conduct is adopted which could have no other purpose than the obtention of an undue advantage, and which is not justified by anything found in the record. This course, if pursued, would no doubt have a salutary effect, finally resulting in a most healthy improvement in the conduct of trials in the court house.

Another ground of complaint is that the verdict is excessive, but in view of the fact that a reversal must be had for the reasons stated, we decline to consider that ground.

Wherefore, the judgment is reversed, with directions to grant a new trial, and for proceedings consistent with this opinion.