**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

**v.**

**Norman HACKWORTH et al., Appellees.**

Court of Appeals of Kentucky.

March 4, 1966.

Robert Matthews, Atty. Gen., H. C. Smith, Frankfort, Dept. of Highways, J. G. M. Robinson, Caldwell & Robinson, Ashland, M. T. Quinton, Jr., Dept. of Highways, Madisonville, for appellant.

John W. McKenzie, Ashland, for appellees.

PALMORE, Judge.

This is the second appeal by the Commonwealth in a land condemnation against the appellees, Norman Hackworth and wife. On the first appeal a judgment in the amount of $24,000 was reversed because the trial court had not permitted a jury view and because witnesses for the Hackworths had arrived at their valuation figures by improper methods. The question of whether the verdict was excessive was reserved without decision. See Commonwealth, Dept. of Highways v. Hackworth, Ky., 383 S.W.2d 372 (1964). On the second trial the jury made an award of $27,-929.

The property taken consisted of a new 6-room frame house and four acres of land on Kentucky Highway 180 near Cannonsburg in Boyd County. It was located in a desirable area near Boyd County High School and within 15 to 20 minutes by automobile to downtown Ashland. The house had a full basement, hardwood floors except in the kitchen, dining room and bath (in which the floors were covered with inlaid linoleum), coal furnace with forced air heat, hot water tank, deep well and water pump, septic tank, stone chimney and fireplace, and fully insulated walls and ceilings. The basement had a drive-in garage for two cars, served by a gravel driveway to the highway. Hackworth estimated the market value at $30,990. Four other witnesses testifying in his behalf ranged from $25,320 to $28,366. Two valuation witnesses appearing for the Commonwealth gave figures of $15,150 and $17,300.

Between the time of the taking and the time of trial the house was sold by the Commonwealth to Hackworth and was removed (except, of course, for the basement and foundation) to another location in the vicinity. A two-car garage and breezeway were added and several other changes were made. The Commonwealth took the position that the jurors should view the house inside and out at its new location and that the differences between its present and former conditions should be brought out in evidence. However, the trial court made a finding that there had been a "substantial change" in the house and that evidence of numerous alterations and differences would tend to confuse the jury, so the jurors were sent to view the relocated house but were not permitted to go inside. They were given photographs of the house in its original condition and location to take with them as the view was conducted, so that exterior differences could be readily observed.

The Commonwealth's first contention is that it was error to permit a view under these circumstances without allowing the jurors to inspect the interior of the house and to receive evidence showing the inside changes.

In the first appeal of the case we were persuaded by the Commonwealth that the trial court ought to have allowed a view. So on the second trial the court felt impelled to do so, and now the Commonwealth complains that it was not enough of a view. However, had the record of the first trial contained the information that ap-

pears in this record, and had the trial court made a finding that by reason of changed conditions a view would not be helpful, or would be misleading, we would not have reached the conclusion that a denial of the view was an abuse of discretion. In other words, with the facts now before us in the record we are able to and do say that the trial court could properly have declined to permit any view whatever. The question then arises, was there any prejudice in the limited view the court did permit?

The answer to this question depends upon the essential purpose of the view. In this state, that purpose is to enable the jurors better to understand and weigh the evidence adduced in the court room. Commonwealth, Dept. of Highways v. Farra, Ky., 338 S.W.2d 696 (1960). What is observed by them in the course of the view is not evidence. Pierson v. Commonwealth, Ky., 350 S.W.2d 487 (1961). Hence it is not necessary that it be extended to minute details, especially when it reasonably appears that such an inspection might tend to confuse the jurors or lead them to consider matters outside the reach of the trial record. In this instance it seems very unlikely that a "windshield" view of the relocated house, whether it did or did not have some value for purposes of orientation, was prejudicial, and we therefore conclude that the trial judge did not abuse his discretion in allowing it.

During cross-examination one of the valuation witnesses for the Commonwealth, having said that he was acquainted with the four persons the Hackworths intended to use as witnesses for the same purpose, was asked the following question:

"Do you know enough about these men to tell the jury whether or not they know about the values of real estate?"

The court sustained an objection to the question and commented, "I am not going to have witnesses passing on another witness." Counsel for the Commonwealth asked the court to admonish the jury not to consider the question, to which the judge replied, "He didn't answer it. * * * I am going to tell them it is up to the jury to pass on the qualifications of a witness. I am not going to have one witness pass on the qualifications of another." Counsel for the Commonwealth then moved to discharge the jury because the court had not in so many words admonished the jurors "not to consider the question."

No doubt there are instances in which the nature and content of a question are such that, even unanswered, it injects prejudice, but we are not by any means persuaded that this question falls in that category. In fact, it may not have been improper at all, but that is unnecessary to decide. Certainly it is not to be compared with the question, "Did your back get any better after the other two verdicts you got in this case?" asked of the plaintiff by his counsel in Stearns Coal & Lumber Co. v. Williams, 177 Ky. 698, 198 S.W. 54, 57 (1917), a decision cited in behalf of the Commonwealth on this appeal.

The witness Brooks Wells, a licensed real estate broker with ample experience in the vicinity of the Hackworth property, testified that in his opinion it had a market value of $27,500 at the time of the taking. He had never been inside the house prior to its relocation, but he was familiar with the property and observed the house while it was being constructed. The Commonwealth moved to strike his testimony because he had not inspected the inside of the building prior to or as of the time of the taking. We agree that this circumstance affected the weight of his evidence. Nevertheless, the testimony was competent and had probative value, and the fact that he did not see the inside of the house was not a sufficient ground for striking his evidence. This particular point was not discussed or decided in Commonwealth, Dept. of Highways v. Rankin, Ky., 346 S.W.2d 714 (1961), and Commonwealth, Dept. of Highways v. Slusher, Ky., 371 S.W.2d 851 (1963). See, however, Stewart v. Common-

wealth for Use and Benefit of Dept. of Highways, Ky., 337 S.W.2d 880, 883 (1960), in which it was held that testimony directed to comparisons was not disqualified by reason of the witness's not having made inside inspections of the property being compared. As we have said, this is a circumstance bearing more upon weight and credibility than on competence of the testimony. The same comment applies to the fact that the witness in question also was a defendant in a pending condemnation case.

■ The Commonwealth objected to the appellee Norman Hackworth's valuation testimony on the ground he did not have sufficient qualification. Cf. Commonwealth, Dept. of Highways v. Fister, Ky., 373 S.W.2d 720, 723 (1963). He testified that he was a carpenter by trade, had bought and sold and built and sold houses in Boyd County, knew of other property sales in the area, understood the definition of "market value," and by reason of his experience in those respects was familiar with and had an opinion as to the market value of his own property, which he placed at $30,990. Without belaboring the point, we conclude that he showed enough qualification to express his opinion.

■ The only other witness who evaluated the property as high or higher than the verdict was Henry Collinsworth, manager of the Federal Land Bank Association of Catlettsburg, who gave a figure of $28,366. The Commonwealth makes the novel argument that because Mr. Collinsworth has testified as a valuation expert in a number of highway condemnation cases that have been reversed by this court, somehow we ought to take judicial notice that he is not a credible witness. It is contended also that some significance should be accorded the fact that, for a reason not asked and thus not explained, he was not an authorized loan appraiser for the Federal Land Bank or its local association on June 26, 1961, the date of the taking. Again we find ourselves subjected to flyspecking.

This witness had lived in Boyd County for over 20 years and had appraised hundreds of pieces of real estate, had bought and sold property himself, had known the Hackworth property for a number of years and had observed the house as it was being constructed. It was his practice to keep himself advised of all property sales in the area in order to be abreast of trends and conditions in the real estate market. He had inspected the premises for appraisal purposes immediately before the taking and was thoroughly familiar with all details of the house. What more can be said? It is futile to go on.

■ The witnesses Montague and Williams, real estate brokers appearing for Hackworth, both appraised the property at $25,320. There was and is no question as to their qualifications, but the Commonwealth carps at their testimony because they did not use comparable sales and because upon cross-examination each of them proved to be of somewhat hazy memory on such items as sidewalks and gutters. These matters, of course, are relevant only with respect to the weight and credibility of their testimony. Moreover, since both Williams and the witness Brooks Wells, whom we have mentioned heretofore, said they were familiar with the comparable sale properties discussed by the Commonwealth's valuation witnesses, and that none of them actually were comparable, we are not able to judge with any assurance the extent to which the Commonwealth's testimony was supported by valid comparable sales either.

■ The last contention is that the verdict was excessive. It probably was, but in view of the competent supporting evidence we cannot say it was so flagrant and far out of line that it must strike reasonable men at first blush as having been given under the influence of passion and prejudice and in disregard of all credible evidence.

The judgment is affirmed.