**A. P. MORRIS, d/b/a Morris Brothers Coal Co., Appellant,**

v.

**Lowell C. DANIEL et al., Appellees.**

Court of Appeals of Kentucky.

April 2, 1971.

Clarence Bartlett, Bartlett, McCarroll & Nunley, Owensboro, for appellant.

Earl F. Martin, Martin & Martin, Hartford, for appellees.

DAVIS, Commissioner.

Lowell C. Daniel and Rose Marie Daniel, his wife, obtained verdict and judgment against A. P. Morris for $16,100 based on their claim that negligence of Morris in coal-mining operations had resulted in casting deleterious substances on their farm, permanently damaging the real estate.

For reversal, Morris contends that (1) numerous incompetent and inflammatory questions were propounded by appellees re-

sulting in denial of a fair trial, and (2) the verdict is excessive. Since the court finds merit in the first assertion of error, the question of excessiveness of the verdict is reserved.

Appellees sought both compensatory and punitive damages, contending that appellant had conducted his mining operations in wanton disregard of the rights of others, in face of many complaints to him by neighboring landowners. The trial court refused to submit any issue of punitive damages to the jury. That ruling is not attacked on this appeal.

The critical question for determination is whether the record demonstrates the injection by appellees of incompetent matter calculated to inflame the minds of the jury against appellant. The proceedings with respect to this issue are best illustrated by setting forth the pertinent portion of the cross-examination of appellant:

"Q. Well, didn't Glen Wells sue you for the very same thing that Daniel is suing you for—

MR. BARTLETT: (Interrupting) If the Court please—

Q. (cont'g)—in about 1957?

MR. BARTLETT (continuing)—I represented these people in that and I happen to know that—and I object because in the first place, Judge, Glen Wells is not a party here—

MR. MARTIN, SR: No sir.

MR. BARTLETT: The case was never tried—as far as I know—

MR. MARTIN, SR: That would be a part of the records of this Court, Judge.

JUDGE HINES: Well, why don't you ask him if he has had other litigation regarding the operation of his mines.

MR. MARTIN, SR: All right—

MR. BARTLETT: And we will object to that, if the Court please, because anybody doing business or driving an automobile may have litigation but that don't mean that he is at fault or at fault in some other action.

JUDGE HINES: Well, that is true.

MR. MARTIN, SR: Judge, I have a right to show this on our claim for punitive damages—

JUDGE HINES: Well, I think on the punitive angle of it you have a right to ask that, although it is a pretty close question for the court to rule on. Now did that turn out—

MR. BARTLETT: It never was tried.

JUDGE HINES: Gentlemen, I just can't practice your case for you. You know how to practice this case.

MR. MARTIN, SR: I think I do, Judge, but apparently I don't. I have had an objection to practically every question I have asked.

JUDGE HINES: I think it is your form—

MR. MARTIN, JR: Your Honor, when we were on direct testimony, every question we asked Judge Bartlett got up and made a speech about it and on his cross examination, your Honor—

JUDGE HINES: Now listen, gentlemen, we are going to get through with this case today if it is twelve o'clock tonight. I am not coming back any more. Now ask those questions in the manner in which you know how to produce evidence. Ask him if he has had other litigation regarding his property. I think that is permissible.

MR. MARTIN, SR: I have asked him—

MR. BARTLETT: (Interrupting) Now if the Court please, many a lawsuit, Judge, has—

MR. MARTIN, JR: Judge, see—how he answers that question.

MR. BARTLETT: (Continuing) It is not fair to ask whether he has had other litigation—

JUDGE HINES: Regarding this property—

MR. BARTLETT: Many a lawsuit has been unfounded, and it is not fair to ask him whether he has had other litigation —about anything.

JUDGE HINES: Regarding this property?

MR. BARTLETT: Regarding anything, yes sir.

MR. MARTIN, SR: That is the—

JUDGE HINES: I think that is a rather close question as to whether or not it would be admissible.

MR. MARTIN, SR: (continuing)—only way I can show whether he had regard for the rights of others, Judge.

MR. BARTLETT: But Judge, you can be sued about anything.

MR. MARTIN, JR: And this man has been, Judge, many times.

JUDGE HINES: Well, the best evidence would be to bring the records up here.

MR. MARTIN, SR: Well, we can bring the court records.

JUDGE HINES: Let's proceed in another angle of the case.

Q. I will ask you, Mr. Morris, if you haven't had numerous lawsuits regarding your operation of that coal mines (sic) from practically everybody in that area?

A. No sir.

Q. You—

MR. BARTLETT: We object to that, to start with it is not competent—

JUDGE HINES: He has answered the question—no.

Q. (continuing) Did Glen Wells sue you over this very same thing in 1957—in this Court?

MR. BARTLETT: Now Judge—

JUDGE HINES: Sustain the objection. Now he has stated—no. Now you know that the best evidence are the records.

MR. BARTLETT: And that was, Judge, before Mr. Daniel even bought this land.

JUDGE HINES: That is correct.

MR. MARTIN, JR: He has denied it—

MR. CATINNA: The denial though—was numerous lawsuits, not one lawsuit—

JUDGE HINES: That is correct.

Q. And I will ask you if Dan Clouse who now owns the former Glen Wells property, doesn't have also pending a suit in this court right now, over the very same thing?

MR. BARTLETT: If the Court please, one more question about that now and I am going to make a motion here that has merit to it.

JUDGE HINES: And I will have to sustain that. Now he has answered the question no—is that right, Mr. Morris?

MR. MARTIN, JR: Did you answer that question no? Did you answer that question (addressing Mr. Morris)?

JUDGE HINES: Did you answer?

MR. MORRIS: Well, I don't know—I am lost.

MR. MARTIN, JR: Did you answer the question about Dan Clouse—

MR. BARTLETT: If the Court please—

JUDGE HINES: Wait a minute—please —give him time to answer the question.

MR. BARTLETT: I am raising this question, Judge, the fact that somebody else may have sued—that doesn't mean that the man is right—that remains to be tried out.

JUDGE HINES: That's right—the case hasn't been tried. I will sustain your objection. Go right on.

Q. You have admitted that Herman Iler made a claim about damages to his land?

MR. BARTLETT: Object, if the court please, because it is admitted that it is way down here—it is nearly to Hartford down here—and the property here is out here on Highway 62—

MR. MARTIN, SR: Nearly to Hartford?

MR. CATINNA: It was on Muddy Creek.

JUDGE HINES: If it is not in this area —sustained.

MR. MARTIN, SR: We submit, your Honor, that the Herman Iler is below the Daniel land and in that vicinity.

Q. And I will ask you if Carroll Taylor, who is also in that vicinity and below the drainage to your mine, hasn't also complained about your drainage?

MR. BARTLETT: We object, Judge, about complaints—people complain about chickens getting over in somebody's yard.

JUDGE HINES: The Court sustains it.

Q. You have even denied your employees the right to join the Union, haven't you?

MR. BARTLETT: Objection—

JUDGE HINES: I will have to sustain that.

MR. BARTLETT: Well, now just a moment, Judge, I want to go to Chambers with you about that."

In chambers appellant's counsel moved that a mistrial be declared, with a setting aside of the swearing of the jury and a continuance of the case. In the proceedings in chambers it was stated to the court that four members of the jury were "union" miners (as shown on *voir dire* and seemingly conceded by counsel for appellees). Accounts were related to the trial judge concerning prior bitter disputes between appellant and the coal miner's union, including an injunction proceeding. The trial judge denied the motion for a mistrial, and when the trial was resumed before the jury, he gave the following admonition:

"Gentlemen of the Jury, when either attorney makes an objection and the court sustains that objection, then you are not to consider that question, nor if it is answered, to consider the answer.

"The court sustained the last question (sic) before we adjourned for lunch and you are not to consider that at all on the trial of this case."

■ It appears beyond cavil that it was erroneous to offer evidence concerning other lawsuits and alleged anti-union activities. The record discloses, however, that objections were sustained to this line of evidence. It must be noted that the trial judge's rulings respecting the admissibility of evidence of other litigation were susceptible to inducing the jury's belief that the court at first regarded such evidence to be competent.

■ Evidence of other accidents or injuries may be admissible in some circumstances for limited purposes. Such admission is regarded as an exception to the general rule which excludes evidence of independent events not directly connected with the matter in issue. See 29 Am.Jur. 2d, Evidence, Sec. 305, p. 351. Cf. Flynn v. Songer, Ky., 399 S.W.2d 491, 495. But, the mere fact that other persons have filed suits or made complaints does not tend to prove whether a similar accident or injury occurred. It may be that competent evidence could have been adduced through witnesses who related specific facts concerning other occurrences sufficiently connected as to render them admissible; that question is not presented, so it is not decided. What is presented is the repeated effort to create an impression that Morris conducted his mining operations with wanton indifference to the rights of others by the device of asserting that others had *sued* him or *complained* to him. The inquiry respecting anti-union activity lacks even that tenuous basis for claimed admissibility.

It appears that none of the testimony about other lawsuits or anti-union activity was actually received into evidence. Additionally, the trial judge admonished the jury to disregard questions and answers

to which he had sustained objections. Yet, it seems plain from the record that the overall effect of the repeated questioning about other litigation was indelibly impressed upon the jury. This conclusion is buttressed by the expressions of the trial judge of his opinion that evidence of other suits was admissible.

The generous verdict (a little more than the entire farm cost about eight years before) makes it improper to conclude that the errors mentioned were harmless. The trial judge's admonition to the jury to disregard the questions and answers apparently was not heeded by the jury. In some instances, as prior decisions of this court have held, the court's admonition will not suffice to render harmless an erroneous ruling. The present case falls within that realm. Cf. Stearns Coal & Lumber Company v. Williams, 177 Ky. 698, 198 S.W. 54; Wolf Creek Collieries Company v. Davis, Ky., 441 S.W.2d 401; Mason v. Stengell, Ky., 441 S.W.2d 412, 416.

Considering the entire record, the court is persuaded that the appellant was not accorded a fair trial by reason of the prejudicial effect of the improper innuendos repeatedly injected into the record in behalf of the appellees.

The judgment is reversed with directions to grant appellant a new trial.

All concur.