RENDERED: APRIL 2, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0388-MR

COMMONWEALTH OF KENTUCKY,
TRANSPORTATION CABINET,
DEPARTMENT OF HIGHWAYS                                        APPELLANT


                         APPEAL FROM LOGAN CIRCUIT COURT
v.                       HONORABLE TYLER L. GILL, JUDGE
                         ACTION NO. 15-CI-00090


PTL WAREHOUSING, LLC; AND
H & H SHEET METAL A/K/A H & H
SHEET METAL FABRICATORS, INC.                                APPELLEES


                              OPINION
                       REVERSING AND REMANDING

                            ** ** ** ** **

BEFORE: ACREE, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: The Commonwealth of Kentucky, Transportation

Cabinet, Department of Highways (the Transportation Cabinet) appeals from the

trial order and judgment of the Logan Circuit Court after a jury trial in a

condemnation action. The Transportation Cabinet argues the trial court erred in wrongfully denying its request that the jury view the subject land pursuant to Kentucky Revised Statutes (KRS) 416.620(1).

In April 2015, the Transportation Cabinet filed a petition to condemn 1.43 acres of the 13.01-acre parcel belonging to PTL Warehousing, LLC, for a proposed highway project for the Russellville Southern By-Pass. The portion of the property to be condemned included a large steel warehouse which H & H Sheet Metal a/k/a H & H Sheet Metal Fabricators, Inc., rented. The Transportation Cabinet also sought a temporary easement to 2.265 acres of the non-condemned property for building removal. Appointed commissioners awarded PTL Warehousing $89,750 in compensation. However, both parties filed exceptions to this compensation amount.

The trial court ruled that the Transportation Cabinet had the right to condemn the land and materials, and an interlocutory judgment was entered permitting the Transportation Cabinet to proceed with removing the warehouse. A jury trial was set for a determination of the amount of compensation owed to PTL Warehousing for the taking of its land and building, with the parties stipulating to the value of the temporary easement.

Prior to the trial, the Transportation Cabinet repeatedly requested, in accordance with KRS 416.620(1), that the jury be given an in-person view of the

property. Initially, the trial court appeared to agree that a viewing was needed. However, the trial court then indicated to the parties that it was uncertain that a viewing would be helpful as the jurors had likely eaten at Arby's which was located across the street from the subject property. Later, after asking during *voir dire* whether the jurors had eaten at the Arby's in Russellville, the trial court declined to allow the site visit, explaining that it did not see how it would be helpful for the jury to view the site when the jurors were familiar with the location, and there were good descriptions of the property.

During the trial, three valuation experts testified about the "before" and "after" fair market valuation of the tract of land. The "before" values ranged from $350,000 to $907,000 and the "after" values from $194,980 to $234,000. The jury found that the fair market value of the tract "before" was $720,000 and "after" was $220,000, a difference of $500,000.

The Transportation Cabinet argues the judgment must be reversed because the trial court erroneously denied its right to have the jury view the property upon request. It explains that such denial did not involve the kind of unusual or extreme circumstances that would give the trial court discretion to deny a jury view or, alternatively, if the court had such discretion that it abused its discretion in denying a viewing without making appropriately supported findings.

-3-

PTL Warehousing argues that the trial court did not err in denying the viewing because the evidence included high-quality satellite and aerial photographs beyond what was available back in the 1960s and 1970s (when the last relevant cases explored the jury view issues), significant evidence was put on to educate the jury about the property both before and after the taking, the principal item requiring compensation was the destroyed warehouse, and the Transportation Cabinet made no claim that the evidence was insufficient to justify the jury award. PTL Warehousing also argues that any error is harmless.

We interpret statutory language so as "to give effect to the General Assembly's intent," with the understanding that the legislature is presumed to intend the plain meaning of the statutory language used. *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005). "In other words, we assume that the Legislature meant exactly what it said and said exactly what it meant. Only when it would produce an injustice or ridiculous result should we ignore the plain meaning of a statute." *Id.* (internal quotation marks, footnotes, and brackets omitted). *See* KRS 446.080 (providing rules of statutory construction).

KRS 416.620(1) states in relevant part: "All questions of fact pertaining to the amount of compensation to the owner, or owners, shall be determined by a jury, which jury on the motion of either party shall be sent by the court, in the charge of the sheriff, to view the land and material." As defined in

KRS 446.010(39), the term "shall" is mandatory. There are no cases interpreting the jury viewing portion of KRS 416.620(1).

The prior statute, KRS 177.087(1), contains almost identical language and has been interpreted several times. It provided in relevant part: "All questions of fact pertaining to the amount of compensation to the owner or owners shall be determined by a jury, which jury, on the application of either party, shall be sent by the court, in the charge of the sheriff, to view the land and material." *See Commonwealth Dep't of Highways v. Caudill*, 523 S.W.2d 880, 881 (Ky. 1975) (quoting the relevant statutory language from KRS 177.087(1)).

KRS 177.087(1) replaced an earlier statute, KRS 416.050, which had the permissive language of "may." *Commonwealth, Dep't of Highways v. Farra*, 338 S.W.2d 696, 698 (Ky. 1960).

"[T]he essential purpose of the view . . . is to enable the jurors better to understand and weigh the evidence adduced in the court room. What is observed by them in the course of the view is not evidence." *Commonwealth, Dep't of Highways v. Hackworth*, 400 S.W.2d 217, 220 (Ky. 1966) (*Hackworth II*) (citation omitted). *But see Farra*, 338 S.W.2d at 698 (noting a difference of opinion in courts as to whether the viewing is evidence or not).

Generally, Kentucky's highest Court has been "[o]bedient to the mandatory language of KRS 177.087(1)[,] . . . has been rather strict in upholding

-5-

the right to a view, and has rarely sustained its omission after a request for it by either party." *Commonwealth, Dep't of Highways v. Walker*, 496 S.W.2d 344, 344 (Ky. 1973). Reversal "because the statute is mandatory . . . has been declared the rule even though there have been changes in the property," including the removal of buildings. *Commonwealth, Dep't of Highways v. Hamilton*, 495 S.W.2d 187, 188 (Ky. 1973) (citations omitted). *See Farra*, 338 S.W.2d at 698 (initially establishing this rule by relying on the consistent interpretation given to virtually identical "peremptory language" in the Illinois eminent domain statute and "like statutes in several other states").

A very narrow exception exists to the mandatory language of the statute where there are "unusual or extreme circumstances[.]" *Hamilton*, 495 S.W.2d at 188 (quoting *Terry & Wright of Kentucky v. Crick*, 418 S.W.2d 217, 220 (Ky. 1967)). One such circumstance permitting the trial court the discretion to deny a viewing is where rough terrain makes viewing the property impossible for some members of the jury. *Commonwealth, Dep't of Highways v. Jewell*, 405 S.W.2d 678, 679-80 (Ky. 1966). *Cf. Caudill*, 523 S.W.2d at 881 (explaining unusual circumstances were not present to justify refusing a viewing where the property was unmarked by stakes, the viewing would require a five-mile trip of which a short distance would be on an unpaved road, and the viewing would cause inconvenience and delay in the trial).

Another unusual circumstance can exist where "by reason of *changed conditions* a view would not be helpful, or would be misleading[.]" *Hackworth II*, 400 S.W.2d at 220 (emphasis added). This may also be described as "drastic changes" which have rendered a viewing of the subject property an exercise in "futility[.]" *Hamilton*, 495 S.W.2d at 189.

However, a reviewing court cannot assume this to be the reason for a trial court's decision without a specific finding that "such material change in fact existed as to utterly frustrate the purpose of a jury view. Failing that inquiry, at least, it [would be] an abuse of discretion to forbid the jury view." *Commonwealth, Dep't of Highways v. Hackworth*, 383 S.W.2d 372, 374 (Ky. 1964) (*Hackworth I*).

Therefore, in *Hackworth I*, the Court held that it was error for the trial court to refuse to allow the viewing of a house which had been relocated to another property but otherwise had few modifications. *Id.* at 373-74. In the second appeal in *Hackworth II*, 400 S.W.2d at 219-20, with evidence that the modifications to the house were extensive, the Court held that it was not error for the trial court to prohibit a view of the inside of the relocated house.

In *Commonwealth, Dep't of Highways v. Eberenz*, 435 S.W.2d 753, 755 (Ky. 1968), the trial court denied a motion to view the property on the basis

that the "building which is the principal item of damage has been demolished and completely removed from the premises[.]" In reversing, the Court explained:

> In the Hackworth cases . . . [t]here was no question about the right to view the land. In the present case the building had been destroyed and could not be viewed, but the land remained, and for whatever value it might have afforded the jury a view should have been permitted. It is true the witnesses attributed more value to the destroyed building than to any other element. Still the jury was charged with the duty of determining the value of the entire property before and after the taking. We cannot say a view of the land would not have been beneficial in making that determination.

*Id.* at 755-56.

Reversal is required because the Transportation Cabinet clearly requested the viewing, and the trial court's analysis was insufficient to invoke the narrow grounds of exception to this mandatory statutory language. The trial court did not rely on the existence of high-quality pictures and satellite imagery or the lack of the building in denying the viewing. Instead it concluded that the viewing was unnecessary because jurors were familiar with the location, and there were good descriptions of the property. Knowledge about location and good property descriptions are hardly unusual factors in condemnation cases.

However, even if the trial court had relied on such things it would not change the outcome here. Technological advancements cannot justify a failure to follow the mandatory statutory language. It is for the General Assembly, rather

than the courts, to decide whether such advancements have rendered the viewing requirement superfluous.

The destruction of a building itself is also not an unusual circumstance and, as explained in *Eberenz*, this does not negate the need to view the land itself. On the record that appears before us, there is no justification for the trial court's refusal of a viewing where it was properly requested.

We are also satisfied that the trial court's error is not harmless. Although PTL Warehousing argued that the damages for the taking principally involved the destruction of the warehouse, rather than seizure of the land itself, it has not argued the amount for which it sought compensation was solely related to the warehouse. Because there was also a value in the land seized and a valuation needed to be made as to the land that remained, a view of the land was relevant to a jury determination as to the amount of the loss. As in *Eberenz*, 435 S.W.2d at 756, "[w]e cannot say a view of the land would not have been beneficial in making that determination." *See Hackworth I*, 383 S.W.2d at 374 (determining the denial of a viewing of a house in its new location could not be considered harmless error); *Walker*, 496 S.W.2d at 344 (citations omitted) (affirming the trial court's decision "permitting the jury to view the premises after they had been substantially changed by the project[,]" noting "[i]n this instance the trial court might very well have committed reversible error by denying a view").

-9-

Accordingly, we reverse and remand the judgment. On remand, if the Logan Circuit Court believes there were sufficient grounds to deny a viewing during the trial, based on unusual circumstances we have not already rejected as legally insufficient, it must make appropriate findings justifying such a decision. Otherwise, the Logan Circuit Court must hold a new trial during which the jury will be permitted to view the land, unless new circumstances have arisen in the meantime which now make such a viewing futile, and the trial court makes appropriate findings justifying such a decision.

ALL CONCUR.

BRIEFS FOR APPELLANT:

S. Chad Meredith
Solicitor General of Kentucky
Frankfort, Kentucky

Angela Hatcher Hornsby
Bowling Green, Kentucky

BRIEF FOR APPELLEES:

Timothy L. Edelen
Bowling Green, Kentucky