## Valentine, et al. v. Weaver.

(Decided March 18, 1921.)

## Appeal from Boyd Circuit Court.

1. Master and Servant—Workmen's Compensation Acts—Findings.— Where there is no evdence to support the findings of fact or award of the compensation board the court may sct same aside, but if there is substantial or credible evidence supporting the findings, the court can not interfere. In such cases the award, like the verdict of a properly instructed jury, will not be disturbed by the court on review.

2. Master and Servant—Workmen's Compensation Acts—Evidence.— Hearsay evidence in a proceeding before the compensation board is not prejudicial if, independent of such evidence, there is sufficient legally competent evidence to sustain the award.

3. Master and Servant—Workmen's Compensation Acts—Findings.— While the statute contemplates a simplified procedure before the compensation board the elementary and fundamental principles of a judicial inquiry must be observed, and the findings and award must rest upon some competent and relevant evidence of a sound, probative character, be it direct or circumstantial.

4. Master and Servant—Evidence.—It is competent for a physician to testify that decedent told him he had run a splinter in his finger and the time when it happened, but it was not competent to tell where decedent said the accident happened.

5. Master and Servant—Evidence—Res Gestae.—A statement so far removed in point of time from the main fact as to make it a mere narrative of a past transaction, or which was made at some distance from the place of its occurrence is not admissible in evidence as a part of the res gestae.

ROBT. T. CALDWELL for appellants.

PRICHARD & MALIN for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

William Valentine died November 2, 1918. At and prior to this date he had been employed as night watchman by appellee Weaver, trading and doing business as the Ashland Foundry & Machine Co.

It was a part of decedent's duty to prepare kindling for the purpose of making fires in the stoves to keep the shop warm. It is claimed that while cutting kindling at the foundry on October 25, 1919, decedent got a splinter in his finger and died a week later of septicaemia as a result of said injury.

Upon application of appellants (the dependent widow and chldren of decedent), to the Workmen's Compensation Board, an award was made in their favor of twelve ($12) dollars per week for a period of 335 weeks (not exceeding the sum of $4,000), besides funeral expenses and costs.

Being of the opinion there was no competent evidence in the record showing decedent was injured or died from any injury received in the course of his employment by appellee, the circuit court, upon petition for review, set aside the award so made by the board. The case was tried in the circuit court on the record certified to it by the compensation board, the only evidence before the board being that introduced by appellants. Sec. 1 of the compensation act (Ky. Stats. Sec. 4880) provides that the act affects the liability of employers subject thereto to their employes for personal injuries sustained by the accident arising out of and in the course of his employment or for death resulting from such accidental injury.

Since the sufficiency of the evidence to support an award is the real question in issue we will give a succinct statement of the testimony before the board, using, in the main, the phraseology employed by the witnesses: The first the widow knew of the accident was Saturday morning, October 26, about 9 or 9:30. Her husband had gotten home from work and after breakfast he took a nap; he awakened and said "I got a splinter in my finger at work last night; have been suffering awful bad and can't sleep." He suggested that their son Jim look at the finger as he had such good eyesight. Her husband returned to work that afternoon, but soon came home. A doctor was called about 8 p. m. Decedent continued to grow worse all the time.

Decedent's daughter Lida got breakfast for her father about 5 o'clock. He fixed to wash and said his finger was awful sore, and said: "I got a splinter in it down to the shop last night while getting kindling." She did not look at the finger.

The son James says that about 9 o'clock Saturday morning his father told his mother to look at his finger, and see if he had gotten a splinter in it. She told him to get me to look at it. I got a needle and looked at his finger; there was a little hole in it. As soon as I touched it

the blood commenced running out. I could not see whether there was a splinter or not. He said it was awful sore. Did not tell how he got the splinter there.

Ed. Schultz, brother-in-law of Mrs. Valentine, was employed at same place as decedent. Witness was going home about 11:30 Saturday morning; he met decedent coming to town. Decedent showed him his finger, which was swollen, and said he had run a splinter in his finger down at the shop the night before, while he was breaking kindling to kindle fires in the coke stoves to keep the shop warm.

Fred A. Lutz, foreman for appellee, was working at a temporary hospital on account of the flu epidemic. At 4 o'clock a telephone message was received to go to the plant and get Bill (decedent) and see what was the matter and take him home. One of decedent's fingers was wrapped up. He said: "I am awful sick, it is my hand, that wound makes me sick." He said, "I run a splinter in my finger while cutting kindling here in the shop to build fires."

Dr. DeBord attended decedent Saturday night. Patient was suffering with chills, a high temperature and complaining of his finger. Said he stuck a splinter in his finger while he was getting kindling to make a fire just after he went to work, or just after he quit work. Was under the impression he wanted to make a fire that morning; it may have been the fire was to have been made that night. It was too late to make an examination of the finger. Two days later the finger was in a terrible condition; made a slight puncture to let some of the infection out. Patient grew worse all the time. Turned the case over to Dr. Moore. The septic condition found could have been due to a splinter. He did not find a splinter.

Dr. Moore saw the patient first on Sunday. Had elevation of temperature and gangrenous condition of one finger. Patient said he had injured his finger and that he had run a splinter in it some days prior to that. Patient was taken to the hospital and finger amputated; he died of general septicaemia. Patient told witness, as well as he could remember, that while at work he, the patient, ran a splinter in his finger. This man died from general septicaemia, due to infection of the finger although the time was short for such serious symptoms to be found; does not recall any case where such infection came on so quickly. Patient had practically same symptoms as flu. It was almost impossible to differentiate

them; considering the serious condition of his finger he attributed it to that cause. But for the condition of the finger he would have been apt to have said it was influenza.

Is this evidence sufficient to show that decedent was injured while in the performance of services for appellee, and was there any causal connection between the requirements of his work and the injury, i. e., did the injury arise out of and in the course of his employment?

Under sec. 52 of the act (Ky. Stats. Sec. 4935) if there is no evidence to support the findings of fact, the court may set aside the order, decision or award based thereon.

As said in Milwaukee Coke & Gas Co. v. Industrial Commission, 160 Wis. 247, 151 N. W. 245, if there is substantial or credible evidence supporting the finding of the board, the court can not interfere. In such cases, the award, like the verdict of a properly instructed jury, will not be disturbed by a court on review. Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152.

Hearsay evidence alone will not support an award by the compensation board, but its admission is not prejudicial if, independent of such evidence, there is sufficient legally competent evidence to sustain the award. The board is not to be governed by technical rules of evidence in the hearing of matters presented to it. As expressed in the act—its procedure shall be as summary and simple as possible. (Ky. Stats. Secs. 4930 and 4933.) It was the evident aim of the legislature in the passage of the act that controversies arising thereunder should be promptly adjusted without regard to technical rules which oftentimes delay regular litigation; a simplified procedure in such matters was sought. But this does not mean that the elementary and fundamental principles of a judicial inquiry should not be observed. The act permits liberality in investigation and no more, and when incompetent and irrelevant testimony has been excluded, the findings and award must rest upon some competent and relevant evidence of a sound, probative character, be it direct or circumstantial. McCauley v. Imperial Woolen Co., 261 Penn. 312, 104 Atl. 617; Reck v. Whittlesberger, 181 Mich. 463, 148 N. W. 247.

When the evidence is all in it must be sifted and assorted, the competent separated from the incompetent, and out of the testimony there must come some reliable

and substantial evidence, as understood by the common law rules of evidence upon which a verdict must rest. See Carroll v. Knickerbocker Ice Co., 218 N. Y. 435.

Under the rule in this state touching the competency cf medical testimony in detailing conversations had with patients as to the cause of an injury, it is competent for the patient to furnish the physician with a history of the case in order that the physician might be enabled to render a proper diagnosis, and to intelligently treat the patient. It is presumed under such circumstances the party suffering will truly state how he was affected, otherwise the physician might be at a loss as to the remedies and treatment needful to his condition. A few cases will serve as illustrations.

In Omberg v. United States Mutual Accident Association, 101 Ky. 303, 40 S. W. 909, it was held competent for the physician to testify his patient told him a red spot on one of his toes was caused by the bite of a mosquito. In Shade's Admr. v. Covington, etc. Bridge Co., 119 Ky. 592, 84 S. W. 733, a statement by an injured person to a physician that the injury was caused by falling on ice on appellee's bridge was held inadmissible as a part of the *res gestae.* "It was competent," says the court, "to show that the patient said she had received a blow on her head, if she did say it, and how she was otherwise hurt."

In Massachusetts Bonding & Ins. Co. v. Duncan, 166 Ky. 515, 179 S. W. 472, a statement to a physician by a patient that while the latter was carrying watermelons he slipped or fell and received a strain where the melons pressed against his abdomen, was held competent. And so in Hill's Admrx. v. North America Accident Ins. Co., 182 Ky. 125, 206 S. W. 170, same case 186 Ky. 273, 215 S. W. 428, the evidence of the physician that decedent said he had fallen across a grip on January 12th, inflicting a severe injury in the region of the liver, was held competent to prove the injury, its nature, extent and the time it occurred. On the first appeal a reversal was ordered because the physician was permitted to testify not only how but where the injury was received. See also L. & N. R. R. Co. v. Scalf, 155 Ky. 273, 159 S. W. 804.

Reading the present record in the light of the doctrine enunciated in the foregoing decisions, it can readily be seen that appellants have naught upon which to stand. There is a hiatus in the proof, the attempt to supply same through the testimony of physicians having failed,

It follows, therefore, that appellants have not shown that the injury sustained by decedent arose out of or in the course of his employment by appellee.

The testimony of the physicians that Valentine said he stuck a splinter in his finger and the time when this happened was competent, but it was not competent to state where this accident occurred. In other words it is proper to show the how and the when but not the where of the accident, i. e., the manner and time are competent but not the place.

The testimony is not sufficient to bring the statements under the *res gestae* rule. Such statements or declarations to be considered a part of the *res gestae* must, as a general rule, be made contemporaneous in point of time with the particular transaction, at or near the place of its occurrence, and be explanatory of the main fact. A declaration so far removed in point of time from the main fact as to make it a mere narrative of a past transaction or a declaration which does not explain the principal fact, or which was made at some distance from the place of its occurrence is not admissible in evidence as a part of the *res gestae.* Greenleaf on Evidence, Sec. 108; Illinois Central R. R. Co. v. Outland's Admrx., 160 Ky. 714, 170 S. W. 48; Bevin's Admr. v. C. & O. Ry. Co., etc., 190 Ky. 501, 227 S. W. 794.

For the reasons given the judgment must be and is accordingly affirmed.