Carl CABE, Commissioner, Dept. of Labor, et al., Appellants,

v.

CITY OF CAMPBELLSVILLE, Kentucky, et al., Appellees.

Court of Appeals of Kentucky.

Dec. 11, 1964.

---

Robert Matthews, Atty. Gen., H. N. Mc-Tyeire, Asst. Atty. Gen., Robert Chenault, Dept. of Labor, Frankfort, for appellants.

Joseph J. Leary, Thomas F. Marshall, Frankfort, for appellees.

DAVIS, Commissioner.

The appellants are the Commissioner of the Kentucky Department of Labor, the individual members who served as a Prevailing Wage Review Board, and the Kentucky Department of Labor. The appeal challenges the judgment of the Franklin Circuit Court, which revised downward the prevailing wage schedule which had previously been established by the appellant members of the Prevailing Wage Review Board. KRS 337.520(3) and 337.522(2).

The appellees, City of Campbellsville and Board of Education of Campbellsville Independent School District, constitute the public authority seeking the establishment of an applicable prevailing wage schedule within the framework provided in KRS 337.505 through 337.550. The request for determination of the prevailing wage arose incident to the plan of the Board of Education for the construction of a band hall and auditorium on the city school campus.

The basic questions presented are: (1) whether the finding of the Prevailing Wage Review Board is supported by substantial evidence, and (2) whether the Board had the authority to consider hearsay evidence in reaching its determination.

As provided by KRS 337.520 the Commissioner of the Department of Labor (hereinafter referred to as the Commissioner) conducted a hearing to initially determine the prevailing wage schedule for the proposed public work. We shall refer to this hearing as the initial hearing.

At the initial hearing it was shown that on February 10, 1961, the City of Campbellsville had promulgated a prevailing wage schedule which the City, as the public authority, found to be the applicable prevailing wages for public work. Such action was as then authorized by KRS 337.510. At the initial hearing evidence was presented in behalf of appellees that there had been no change in the rate of wages in the area since the adoption of the schedule.

Appellees presented several local contractors who testified that they knew the prevailing wages in the area; in general their testimony affirmatively agreed with the 1961 prevailing wage schedule.

In opposition to this, evidence was presented by a representative of the Kentucky Building Trades Council. The witness filed ten written statements from individual contractors which reflect what the contractors have paid for various types of labor in Taylor County. The statements disclosed that these wages were at higher rates than fixed by the 1961 schedule. The statements also noted the respective numbers of employees engaged by the various contractors in each labor classification. The number of such employees ranged from just one to a maximum of eight on one project. Counsel for appellees objected to the in-

troduction of the statements, and moved that they be excluded on the ground that they constituted hearsay evidence. The hearing officer did not make any specific ruling on that objection.

It is appropriate here to observe that at the initial hearing, and before the representative of the Trades Council presented the statements, appellees presented six affidavits of individuals in support of the 1961 wage schedule, to which no objection was made.

On September 10, 1963, the Commissioner published his findings as to the prevailing wages (higher than the 1961 schedule), whereupon the present appellees requested the additional hearing authorized by KRS 337.522(2). This hearing we shall refer to as the review hearing.

The entire transcript of the evidence and exhibits at the initial hearing were made part of the record for the review hearing. For the appellees the evidence was again presented by persons acquainted with the wages generally paid for labor in the Taylor County area. These witnesses declared that ample local labor could be had at the wage rate prescribed in the 1961 schedule, with the exception of a few classifications not locally available.

Evidence was presented in behalf of the interested labor organizations through the testimony of the business agents for two Louisville union locals and the secretary of the Louisville Building & Construction Trades Council. These witnesses told of various contracts which had been performed in Taylor County by contractors using union labor and paying union scales of wages. The evidence of these witnesses was objected to as hearsay by counsel for appellees.

After the review hearing, by vote of two to one, the review board found the schedule to be identical with the one announced by the commissioner as the result of the initial hearing.

Appellees then sought judicial review as prescribed by KRS 337.525. The Franklin Circuit Court adjudged that there was no evidence of substance to sustain the wage scale as determined by the review board, and directed that the wage scale as adopted in 1961 be declared as the appropriate schedule.

KRS 337.505 provides the definition of "prevailing wage" as follows:

"(a) The wages that are or have been paid to the majority of laborers, workmen, mechanics, helpers, assistants and apprentices employed in each classification of construction upon reasonably comparable construction in the locality where the work is to be performed; such wages shall be determined in accordance with paragraphs (a), (b) and (c) of subsection (3) of KRS 337.520;

"(b) In the event that there is not a majority paid at the same rate, then the rate paid to the greater number: Provided, such greater number constitutes thirty percent of those employed; or

"(c) In the event that less than thirty percent of those employed receive the same rate, then the average rate."

KRS 337.520(3) sets out the criteria to be considered by the commissioner in determining prevailing wages thus:

"(a) Wage rates paid on previous public works constructed in the localities. In considering such rates the commissioner shall ascertain, in so far as practicable, the names and addresses of the contractors * * *, the locations, approximate costs, dates of construction and types of projects, the number of workers employed on each project and the respective wage rates paid each worker who was engaged in the construction of these projects.

"(b) Wage rates previously paid on reasonably comparable private con-

struction projects constructed in the localities. In considering such rates the commissioner shall ascertain, in so far as practicable, the names and addresses of the contractors including subcontractors, the locations, approximate costs, dates of construction and types of projects, the number of workers employed on each project and the respective wage rates paid each worker who was engaged in the construction of these projects.

"(c) Collective bargaining agreements or understandings between bona fide organizations of labor and their employers located in the Commonwealth of Kentucky which agreements apply or pertain to the localities wherein the public works are to be constructed."

KRS 337.525 fixes the scope of judicial review. The statute authorizes the court to affirm, remand, reverse or modify the review board's determinations under certain circumstances—one of which is if the court determines that the board's findings are not supported by substantial evidence.

There is no doubt that all of the evidence offered for the labor organizations falls into the category of "hearsay" as that term is generally understood. The witnesses did not furnish evidence which derived its value solely from the credit to be given the witnesses; such evidence had to derive its value from the veracity and competency of other persons, not before the review board and not subject to examination under oath. See 20 Am.Jur. Evidence, Sec. 451; Kinder v. Com., Ky., 306 S.W.2d 265. The labor witnesses did not profess to have personal knowledge that the wages of which they testified had indeed been paid—merely that the documents they presented so stated. As noted, appellees objected to this evidence and moved its exclusion.

As early as Valentine v. Weaver, 191 Ky. 37, 228 S.W. 1036, this Court recog-

nized and followed the rule that the admission of hearsay evidence (before the Workmen's Compensation Board) is not prejudicial, but that hearsay evidence alone will not support an award of compensation. The Valentine case has been followed consistently in subsequent opinions. Cf. Shearer v. Bulleit, Ky., 257 S.W.2d 903; Hardwood Sales Co. v. Meeks, 286 Ky. 500, 151 S.W.2d 406; Consolidation Coal Co. v. Ratliff, 217 Ky. 103, 288 S.W. 1057.

It is noteworthy that the Valentine case, supra, followed the celebrated, and much criticized New York decision of Carroll v. Knickerbocker Ice Co., 218 N.Y. 435, 113 N.E. 507, Ann.Cas.1918B, 540. In Valentine this Court said:

"When the evidence is all in, it must be sifted and assorted. The competent separated from the incompetent, and out of the testimony there must come some reliable and substantial evidence, as understood by the common-law rules of evidence upon which a verdict must rest." op. cit. 228 S.W. at p. 1038.

The foregoing quotation fairly embodies the so-called "residuum" rule. A scholarly critique of that rule is found in 2 Davis Administrative Law, Sec. 14.10 through 14.12. Professor Davis points out that Valentine v. Weaver, 191 Ky. 37, 228 S.W. 1036, places this jurisdiction among those supporting the "residuum" rule. Ibid, pp. 322-3.

The fundamental problems inherent in the question under consideration are aptly expressed by Professor Davis:

"The first and most important step in understanding the residuum rule—a step that too many courts have failed to take—is to recognize what is and what is not the alternative to the residuum rule. The alternative is to allow agencies and reviewing courts to exercise discretion in determining in the light of circumstances of each case whether or not particular evidence is reliable even though it would be ex-

cluded in a jury case. In the exercise of such discretion, agencies and reviewing courts will in many circumstances find that particular hearsay or other so-called incompetent evidence has insufficient reliability. Rejection of the residuum rule does not mean that an agency is compelled to rely upon incompetent evidence; it means only that the agency and the reviewing court are free to rely upon the evidence if in the circumstances they believe that the evidence should be relied upon. Rejection of the residuum rule does not mean that a reviewing court must refuse to set aside a finding based upon incompetent evidence; it means only that the court may set aside the finding or refuse to do so as it sees fit, in accordance with its own determination of the question whether the evidence supporting the finding should be deemed reliable and substantial in the circumstances."

However, it is to be noted that no sufficient reason appears to reject the "residuum" rule where better evidence is readily available. This precept is thus expressed by Professor Davis:

> "When the alternative to relying on hearsay is to get the better evidence that is readily available, refusing to rely on the hearsay may often be reasonable. When the alternative to relying on hearsay is to make the finding without benefit of any evidence on the point, relying on the hearsay may often be desirable." 2 Davis, Administrative Law, p. 296, Sec. 14.10.

We think that Carpenter's Local No. 1650 v. City of Lexington, Ky., 248 S.W.2d 407, does not militate against the principles here announced. The opinion in the case just cited does not reflect that any question was there raised as to the sufficiency of the proof. Neither can it be determined from that opinion whether a "residuum" of "non-hearsay" evidence was in the record.

Returning to the case at bar, we can perceive no valid reason for rejection of the "residuum" rule here. Presentation of "the better evidence" by way of testimony of the witnesses who possessed first-hand information would have been relatively simple. It follows, therefore, that the trial court correctly adjudged that the finding of the Wage Review Board was not supported by substantial evidence, since its only support rested upon hearsay evidence. We have written at this length to call attention again to this practical question in the administrative law field. When and if we are presented with the alternatives suggested will be the time to re-examine the "residuum" rule as it may then appear indicated.

The judgment is affirmed.