**BIG SANDY COMMUNITY ACTION PROGRAM et al., Appellants,**

v.

**Ernest CHAFFINS and Workmen's Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

Dec. 7, 1973.

Harris S. Howard, Howard & Howard, Prestonsburg, for appellants.

George Chad Perry, III, Paintsville, for appellees.

PALMORE, Chief Justice.

The appellee, Ernest Chaffins, was injured on July 1, 1969, when a school bus with defective brakes pinned him against the wall of a garage. His claim for workmen's compensation resulted in a maximum award pursuant to findings that he is totally and permanently disabled and that the accident of July 1, 1969, was the cause of that disability. The employer appeals from a judgment sustaining the award. KRS 342.285, 342.290.

The principal ground on which the appeal has been taken is that the findings of the board rest upon evidence that is both incompetent and without sufficient probative weight to support them. In a nutshell, the point is that two medical witnesses whose services were engaged for the sole purpose of examining the claimant and testifying in his behalf gave opinions based in part on the case history as related to them by the claimant and that these opinions

provided the only evidentiary support for the board's finding on the critical issue of causation.

The most severe injury apparent right after the accident was a fractured femur, or thigh bone, three or four inches above the left knee, as the result of which Chaffins underwent surgery and the fractured bone was fixed in place by a metal plate. The treating physician, and the only treating physician to testify in this case, was Dr. John S. Ashworth, an orthopedic surgeon of Ashland, Kentucky, who appeared for the defense. To make a long story short, Dr. Ashworth testified that in August of 1971, when he last saw him, Chaffins had substantially recovered and that what little disability then existed could and should now have been eliminated by proper exercise. Specifically, he denied that Chaffins had at any time complained of back trouble. Dr. Ashworth had released him for return to work as an automobile mechanic on December 14, 1970.

Chaffins testified that while he was in the hospital he did complain that his back was hurt, "but they ignored that. They gave me a shot for the pain I had . . . . and they didn't pay any attention to my back," etc. He said also that his chest was painful and swollen and that his left knee was hurt. Dr. Ashworth conceded that the patient was complaining of his knee when he last examined him, but no objective symptoms could be found to suggest any residual injury. Though he advised removal of the metal plate, Chaffins said he did not want any further surgery.

Dr. Herbert Knodt, an orthopedic surgeon of Columbus, Ohio, examined Chaffins on June 10, 1971. His Xrays indicated that the left leg was an inch shorter than the right and that there was what appeared to be a Grade I spondylolisthesis between vertebrae L5 and S1 of the spine. The claimant was complaining of continuous pain in his low back and right hip and leg, frequent pain in his left leg, headaches, and a "catch" in the left knee when walking. It was this doctor's opinion that in addition to the conditions made obvious by the Xrays the claimant had a "disc injury at the lumbosacral level," in the same area as the spondylolisthesis. His reason for concluding that the back complaints were attributable to injury rather than the congenital anomaly was that according to the case history Chaffins had worked for years without ever having the symptoms until after the accident. Hence it was the opinion of Dr. Knodt that (1) there was a disc injury and (2) it had been caused by the accident.

Dr. Curwood Hunter, a neurological surgeon of Cincinnati, Ohio, examined the claimant on May 21, 1971. His findings, diagnosis and conclusions with respect to causation were virtually the same as those at which Dr. Knodt arrived in his subsequent examination except that Dr. Hunter attributed 50% of Chaffins' functional disability to the congenital anomaly (which, of course, is immaterial for purposes of this case since spondylolisthesis is not a "disease condition," cf. KRS 342.120) and also found some degree of objective support for his diagnosis of a disc protrusion or herniation by reason of the absence of certain ankle reflexes. Again however as in the instance of Dr. Knodt, Dr. Hunter made it clear that in forming his conclusions he had depended to an important extent upon the case history related to him by the claimant.

The most broadly-accepted view among the various courts of the country is that (with certain exceptions not relevant to this case) a medical expert whose services have been procured only to evaluate and testify cannot relate what the patient told him, nor can he express an opinion based in part upon such information. See annotations, 51 A.L.R.2d 1051 (admissibility of opinion) and 37 A.L.R.3d 778 (admissibility of testimony relating patient's statements). That this was once the law in Kentucky is fully explicated in an opinion written by the late Judge E. C. O'Rear in Chesapeake & O. Ry. Co. v. Wiley, 134

Ky. 461, 121 S.W. 402 (1909). In the later case of Great Atlantic & Pacific Tea Co. v. Eiseman, 259 Ky. 103, 81 S.W.2d 900 (1935), which involved the admissibility of the statements but not the admissibility of the physician's opinion, it was made clear that the rule applied alike to both *case history* and *subjective symptomatology.*

Between the *C. & O.* and *A. & P.* cases came Stearns Coal & Lumber Co. v. Williams, 177 Ky. 698, 198 S.W. 54 (1917), in which the court said this: "The cases relied upon, however, do not go to the extent of disallowing to a physician the right to obtain a history of the patient's case, and to form an opinion therefrom which he may give in his testimony upon the trial. The rule only forbids such witness from testifying to the matters and things which the party stated to him concerning the case," etc.

Though it was observed in 65 A.L.R. 1221–1222 with respect to *Stearns* that the court apparently had misread the meaning of the *C. & O.* opinion, in Mary Helen Coal Corp. v. Bigelow, Ky., 265 S.W.2d 69 (1954), an attempt was made to reconcile the cases as follows:

"The correct rule, consistently applied in these and other cases, is that a physician whose examination is made for a purpose other than treatment may express an opinion as to the patient's physical condition and degree of disability although the opinion is based upon subjective symptoms alone, but he may not relate statements or voluntary acts of the patient as a means of bolstering his testimony."

*Mary Helen* held that the examining physician's professional findings and conclusions based on "objective and subjective symptoms" were admissible in evidence. Since it appears, however, from the text of that opinion that the physician also had received a case history, it is not entirely clear whether the court in remanding the case to permit the testimony meant to in-clude or to exclude his use of the case history as a partial foundation for his opinion. That no recognition was accorded to the distinction leaves an inference that "subjective symptoms" and "case history" were lumped in the same category, but that is little more than a guess.

The rule as expressed in *Mary Helen* was repeated in Napier v. Hurt, Ky., 432 S.W.2d 43 (1968), and Arnett v. Thompson, Ky., 433 S.W.2d 109, 114 (1968), in each of which the objection under review related to subjective symptoms alone. These being our latest expressions on the subject, the status of a "case history" as a valid basis in court for an examining physician's opinion remains uncertain, and it is too important a subject to be allowed to remain in that condition.

It seems to us that there is a practical difference between subjective symptoms and a case history. It is one thing for a patient to tell a physician how he feels and where he hurts and another to tell him what has happened, either yesterday, last year or 10 years ago. Though both may be of equal importance to the physician, it is far easier for the patient to fabricate or embellish upon past facts than to feign existing symptoms. The doctor ordinarily is in a better position to assess the genuineness of the symptoms than he is to judge the accuracy of the history. It is our opinion that the law in this state goes quite far enough in permitting him to consider the subjective symptomatology displayed by one who is claiming or about to claim legal relief, and that for purposes of opinion testimony he should not be permitted to take into consideration the patient's case history. We therefore conclude that objections to such testimony are well taken. To the extent that it indicates otherwise, Stearns Coal & Lumber Co. v. Williams, 177 Ky. 698, 198 S.W. 54 (1917), is overruled.

A question then arises as to whether it is this court or the Workmen's Compensation

Board which is to set the rules of evidence for compensation proceedings, and if evidence considered satisfactory to the administrative tribunal is objectionable in a court of law, by what standard are its findings to be reviewed in the courts?

Valentine v. Weaver, 191 Ky. 37, 228 S. W. 1036 (1921), has been cited as placing this jurisdiction among those supporting the "residuum" rule which is to the effect that the findings of an administrative agency will be upheld despite its partial reliance upon incompetent evidence (usually hearsay) if it also had before it competent evidence which by itself would have been legally sufficient to support the findings. See Cabe v. City of Campbellsville, Ky., 385 S.W.2d 51 (1964); Standard Acc. Ins. Co. v. Hinson, 251 Ky. 287, 64 S.W.2d 574 (1933); Rex Coal Co. v. Campbell, 213 Ky. 636, 281 S.W. 1039, 1041 (1926). *Valentine* was a compensation case in which the court summarized its position as follows:

> "The act permits liberality in investigation and no more, and when incompetent and irrelevant testimony has been excluded, the findings and award must rest upon some competent and relevant evidence of a sound, probative character, be it direct or circumstantial . . . . When the evidence is all in, it must be sifted and assorted. The competent separated from the incompetent, and out of the testimony there must come some reliable and substantial evidence, as understood by the common-law rules of evidence upon which a verdict must rest." 228 S.W. at p. 1038.

■ So the rule appears to be that it is for the board to determine what it will accept as proper evidence and the courts will not set aside its findings, as it would a judgment, upon the ground that incompetent evidence was received to the prejudice of the losing party. They will set them aside only if there was not enough legally competent evidence to *permit* the same

findings independently of the incompetent evidence.

■ Returning now to the practical situation presented in this case, we find that the opinions of both Dr. Knodt and Dr. Hunter, having been based to some extent on the case history as related by the patient, were inadmissible in evidence. Without this testimony there is no support for the finding that Chaffins' existing disability is attributable to the injury. Objections to Dr. Knodt's testimony were duly lodged at the time his deposition was taken, but the board was not specifically requested thereafter to rule upon them and under its regulation WCB–1–6d they are to be considered as overruled. There were no objections to Dr. Hunter's testimony.

■ Dr. Hunter's testimony must be treated as competent under the familiar principle that "evidence, though incompetent and subject to exclusion if proper exceptions had been taken, must be considered for whatever it may be worth." May v. May, 311 Ky. 74, 223 S.W.2d 362, 364 (1949); Rodgers v. Hendrickson, Ky., 293 S.W.2d 456, 458 (1956). That leaves only the question of whether, when taken with the other proper evidence in the case, its probative weight would suffice to support the finding of causation.

■ Evidence that is inadmissible on the ground of its inherent unreliability is not necessarily devoid of probative value. If it were, probably it would be objectionable on the ground of irrelevance. In this case the hearsay history related by Dr. Hunter is verified and supplemented by the evidence given by the claimant himself, testifying in the same proceeding under oath and subject to cross-examination. It was therefore "subject to all of the safeguards surrounding the admission of evidence generally." Cf. Miller v. Watts, Ky., 436 S.W.2d 515, 521 (1969), and the discussion of hearsay evidence in Jett v. Commonwealth, Ky., 436 S.W.2d 788

(1969). Perhaps, indeed, it could be argued that under such circumstances the hearsay ought not to be held inadmissible anyway (cf. *Jett*), but we are not ready to go that far with self-serving statements made by the litigant himself. Nevertheless, it can hardly be said that the doctor's opinion, though necessarily based in part upon the inadmissible statements, does not have substantial probative value.

 We therefore hold that the evidence in the case was sufficient. In so holding, however, we feel obliged to observe for the benefit of lawyers who are entitled to know the rules under which they are expected to practice that the board should specify in the form of a standing regulation whether the same rules of evidence will apply in compensation hearings as in judicial proceedings, and, if not, just what it will hear and consider that is not admissible in court. Obviously it needs to settle this question of whether for its purposes a non-treating physician may consider the case history.

The appellant also attacks the "opinion and award" of the board because it does not go into enough detail. True, it hardly merits the title of an "opinion," but KRS 342.275 requires nothing more than an award, findings of fact, and rulings of law. It is not incumbent upon the board to provide for the record a discussion and analysis of either the evidence or the law, and it has provided by its regulation WCB–1–6c that "formal opinions will be delivered only in those cases in which the legal questions are novel or important, or the facts are so complicated as to require detailed analysis."

The only factual issues in this case were (1) the extent and duration of disability and (2) causal connection between that disability and the injury. The board found (1) that the claimant "is 100% permanently and totally disabled" and (2) "that said disability is a direct result of his injury of July 1st, 1969." Those findings are clear and to the point. From the standpoint of form, they leave nothing to be desired.

The judgment is affirmed.

PALMORE, C. J., and JONES, MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.