HOBART MANUFACTURING COMPA-
NY and Travelers, Appellants,

v.

James Robert JOHNSON, Workmen's Compensation Board of Kentucky and James R. Yocum, Commissioner of Labor and Custodian of the Special Fund, Appellees.

Court of Appeals of Kentucky.

Dec. 16, 1977.

Rehearing Denied March 17, 1978.

Discretionary Review Denied
June 27, 1978.

Lionel A. Hawse, Lexington, for appellants.

Benjamin J. Hays, Winchester, Cyril E. Shadowen, Asst. Counsel, Dept. of Labor, Louisville, for appellees.

Before HOWERTON, COOPER and HAYES, JJ.

HOWERTON, Judge.

This is a workmen's compensation case in which the claimant was awarded benefits for 30% permanent, partial disability, with the award being apportioned one-half to the employer and one-half to the Special Fund.

James Robert Johnson, the claimant, experienced low back and neck pain while moving a washing machine from a conveyor belt to his workbench on April 15, 1974.

On this appeal, the employer argued that there was not substantial evidence in the record to sustain the Board's finding of permanent, partial disability, that the Board erred in fixing the amount of Johnson's benefits, and that the board erred in not apportioning medical benefits between it and the Special Fund.

The record in this case is sketchy, at best. A short hearing was held before a hearing officer of the Workmen's Compensation Board and the parties were given some time afterwards in which to file further proof. The employer argues on this appeal that no medical evidence was presented which would allow the Board to make a finding of permanent, partial disability. The Board appointed a physician, pursuant to its statutory authority, to examine the claimant. If that is the only competent evidence which the Board could consider, it is clear from Dr. Massie's report that there was no permanent damage. Dr. Massie concluded:

> It is my opinion that, prior to April 15, 1974, he had no permanent functional impairment, that following this, he probably did have an acute disabling condition which persisted for no more than 8 to 12 weeks, and that this has spontaneously regressed . . . .. No obvious functional impairment either now, and hence, none resulting from any previous injury.

Hobart argues that this is the only evidence of record. The claimant counters that the Board correctly considered a letter summarizing the examination of the claimant by a Dr. Goodman. It appears from the record that the employer requested the claimant to see Dr. Goodman and that the claimant did so. Thereafter, the employer moved the Board to name the Special Fund as an additional defendant. In its motion, the employer stated:

> There is now evidence that this employee was suffering from a pre-existing, dormant, non-disabling, degenerative disc disease condition prior to his action, in which dormant disease was probably exacerbated or brought into disabling reality as a result of his alleged injury.

Attached to this motion was a copy of the report of Dr. Goodman. In his report, Dr. Goodman determined that there was a 5% permanent, functional, anatomic impairment, 2½% due to the pre-existing, degenerative disc, and 2½% as the result of the accident. Thus, if Dr. Goodman's letter can be considered as competent evidence which the Board could consider, there was sufficient medical evidence for the Board, in light of other evidence, to determine that the claimant suffered a 30% functional disability.

At no time did the claimant formally adopt or present Dr. Goodman's report to

the Board, though it can be said in his favor that he did not object to the Special Fund being made a defendant.

Hobart argues that Dr. Goodman's letter was not competent evidence for the Board's consideration in determining the claimant's disability. The record indicates that some time after the motion was granted to add the Special Fund, the claimant's attorney sought an additional expansion of time for submitting proof, stating in a motion and affidavit for extension of time on February 24, 1976, that the appellant had "not taken any medical proof" as of that date. We think that a review of the record would clearly indicate that the Goodman letter attached to the motion was not competent evidence for a determination of a permanent, partial disability. We are impressed by appellant's argument that to decide otherwise would place him in an untenable position—namely, he would be forced to make out the claimant's case for him, or pushed into the position of being unable to show that if there is any disability, the Special Fund is at least partially responsible.

■ The Board must be guided by prevailing rules concerning the competency of evidence. *Perry McGlone Construction Company v. Shaw*, 283 Ky. 84, 140 S.W.2d 829 (1940). This letter was clearly hearsay evidence. In that regard, this letter is not unlike the letter incorrectly admitted into evidence in *Standard Accident Insurance Co. v. Hinson*, 251 Ky. 287, 64 S.W.2d 574 (1933). It was incompetent. We think its admission in this case was prejudicial in that there was insufficient legal, competent evidence to sustain the award if the Goodman letter is removed from the consideration. See *Valentine v. Weaver*, 191 Ky. 37, 228 S.W. 1036 (1921). We do not believe that the attachment of the letter to a motion for adding the Special Fund as a defendant amounts to a declaration against interest. While it was not stated in precise words, we can reach no other conclusion but that the employer, as he argues, was stating that the Special Fund was concurrently responsible with it if any party was liable.

■ In view of the foregoing conclusion, the only other issue we need decide is whether the Board and the circuit court, in its affirmation of the Board, were correct in not apportioning medical benefits between the employer and the Special Fund, rather than holding the employer totally responsible as it did. We believe that no error was committed in this matter, and refer to a recent case of this court in support thereof. See *Yocom v. Reid*, Ky.App. (Rendered June 17, 1977).

We therefore affirm the circuit court's determination on the allocation of medical benefits, and reverse the case to the circuit court so that it may allow the Board to make determinations consistent with this opinion.

All concur.