RENDERED: FEBRUARY 11, 2022, 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0234-MR

JONATHAN HARDIN                                           APPELLANT

v.            APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MARY M. SHAW, JUDGE
ACTION NO. 19-CI-000858

LOUISVILLE/JEFFERSON COUNTY
METROPOLITAN GOVERNMENT
AND LOUISVILLE METRO POLICE
MERIT BOARD                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND JONES, JUDGES.

CALDWELL, JUDGE:  Jonathan Hardin ("Hardin") appeals the decision of the

Jefferson Circuit Court upholding the Louisville Metro Police Merit Board ("Merit

Board") action of approving the termination of his employment as a police officer

by the chief of police, Steve Conrad ("Chief Conrad").

Chief Conrad had terminated Hardin after allegations of Hardin's failure to follow proper police procedures were investigated and substantiated to the Chief Conrad's satisfaction. Hardin appealed his termination to the Merit Board. The Merit Board held a four-day hearing into the termination decision and upheld the decision to terminate Hardin.

Hardin appealed his termination to the Jefferson Circuit Court for administrative review pursuant to Kentucky Revised Statute ("KRS") 67C.323(3)(a).[1] In the circuit court, Hardin alleged that since related criminal records were ultimately expunged, the Merit Board erred when it did not grant his motion that all materials contained in the criminal case file not be admitted at the hearing. He also argued he was denied the right to confront witnesses at the hearing when their transcribed testimony from the investigation of the allegations was presented rather than live testimony.

---

[1] KRS 67C.323(3)(a) states:

> Every action of a dismissal, suspension, or demotion made by the board shall be final, except that any person aggrieved may, within thirty (30) days after the action, appeal to the Circuit Court of the county in which the board meets. The board shall be named respondent as the consolidated local government police force merit board, and service shall be had on the chairman of the board. Notice of the appeal shall be given to the chief or the officer if not already a party to the appeal as real parties in interest. The appeal taken to the Circuit Court shall be docketed by the clerk as a civil action with appropriate judicial review of an administrative action or decision.

The circuit court affirmed the Merit Board. After reviewing the record, the circuit court decision, and the briefs of the parties, we affirm the circuit court.

**<u>FACTS</u>**

In 2015, Appellant Jonathan Hardin was a Louisville Metro Police Officer assigned as a student resource officer at Olmstead Academy North, a public middle school in Jefferson County. He had been an officer for six years at the time of this assignment.

On January 22, 2015, Hardin was in the cafeteria during the lunch period speaking with a school employee when a student attempted to cut the lunch line. The school employee directed the student to the back of the line, but the student ignored the employee's direction. Hardin then intervened and repeated the employee's instruction that the student go to the back of the line. In response, the thirteen-year-old student balled his hands into fists and refused to move. Hardin pushed the student and then punched him in the face, with a closed fist. Hardin then pinned the student on the ground and threatened to utilize his taser on the student if the student continued to resist. The student relented, was handcuffed, and was transported to the hospital for treatment of injuries he sustained. After treatment, the student was released to his parent and was criminally charged with menacing and resisting arrest.

Several days later, on January 27, 2015, Hardin was in a hallway of the school when a student took a step towards him and mimed shooting a basketball over Hardin's head. Another student simultaneously pushed Hardin, and while Hardin was admonishing the second student, a third student pushed Hardin very hard, causing him to fall to the floor. Hardin got up from the floor and approached the third student from the back, grabbing him around the chest and lifting him off the floor. Hardin held the student in the air for approximately twelve seconds while the student tapped Hardin's arms and swung his feet, fighting for air before going limp. Hardin then lowered the student and laid him on the floor. The student regained consciousness soon thereafter and was handcuffed by Hardin for a short time.

Instead of charging the student with a criminal offense, Hardin took the student outside to exercise and then took him into the auditorium to play piano for the student, hoping to calm him. Finally, Hardin drove the child home to his parent after the principal approved him doing so.

Both incidents were captured on video tape. The January 22 incident was reported by Hardin to his supervising officer in accordance with standard police policy. His supervisor completed an administrative incident report, necessary any time an officer or an arrestee is injured during an arrest. The January 27 incident was not reported by Hardin to his superior officer, but rather to

the student resource officer commander. Hardin told the commander it was not necessary to file an administrative incident report because no injuries occurred. However, after viewing the video of the January 27 incident, the commander chose to report it, which report resulted in an investigation of the incident.

After internal reviews of both incidents, Hardin was criminally charged on February 3, 2015, with assault in the fourthdegree, official misconduct in the first degree, and false swearing in relation to the January 22 incident. The charges were eventually dismissed and were the subject of an expungement order issued on January 19, 2016.

In relation to the January 27 incident, Hardin was charged with official misconduct in the first degree (eventually amended to official misconduct in the second degree), assault in the first degree (eventually amended to assault in the fourth degree), and wanton endangerment. He was tried by a jury in June of 2018, and was found not guilty of the amended charges.

Hardin also faced disciplinary action after the internal investigations of both incidents were completed. On March 20, 2015, Chief Conrad terminated Hardin for violations of Louisville Metro Police Department ("LMPD") Standard Operating Procedures ("SOP"). Chief Conrad articulated in the letter of termination that he found that Hardin had violated SOP 9.1.4, *Use of Physical Force*, in both instances; SOP 10.7.2, *Taking Juveniles into Custody*, for the

January 22 incident; and SOP 5.1.2, *Obedience to Rules and Regulations*, for the criminal charges brought against Hardin flowing from both incidents.

Hardin appealed his termination by Chief Conrad to the Merit Board. The Merit Board is vested with authority to review personnel decisions concerning sworn officers by KRS 67C.323. Hardin requested that the Merit Board hearing be delayed until after the criminal proceedings were completed, which was granted. The Merit Board did not begin the proceedings until 2018, after the criminal cases were concluded and the expungement order entered.

At the Merit Board hearing, testimony from Hardin, the lead Public Integrity Unit ("PIU") investigator, the commander to whom Hardin reported the January 27 incident, the Professional Standards Unit ("PSU") commander, the lead PSU investigator, and Chief Conrad were all presented by LMPD in support of the termination. Hardin called as witnesses several school employees, as well as his supervising officer to whom he reported the January 22 incident, and the PSU Investigator.

Following the hearing, during which the members of the Merit Board reviewed the video footage of the incidents multiple times, the Board voted to uphold Hardin's termination, finding that Hardin violated SOP 9.1.4, *Use of Physical Force*, and SOP 10.7.2, *Taking Juveniles into Custody*, but finding no

violation of SOP 5.1.2, *Obedience to Rules and Regulations*. The Board's findings of fact and conclusions of law were issued January 15, 2019.

Hardin then appealed the decision of the Merit Board to the Jefferson Circuit Court, which has jurisdiction to review the Board's decisions via KRS 67C.323(3)(a). Hardin argued that the Board had reviewed evidence that had been included in the file of the expunged case, which he argued was improper. He also forwarded that his rights pursuant to the confrontation clause were violated by the introduction of witness statements rather than live testimony. The circuit court reviewed the determination of the Merit Board and found substantial evidence supported its conclusion that Chief Conrad's termination of Hardin be upheld.

In the opinion and order issued in February of 2021, the circuit court found that the same evidence was used both in the criminal prosecution and in the personnel matter and the expungement of the criminal case did not act to prevent the use of the evidence in the personnel action. As to the witness statements, the circuit court held that the Board did not mention the statements in its findings of fact and conclusion of law, but rather relied upon the testimony of the live witnesses, satisfying the standard that the decision was supported by substantial evidence.

Hardin now appeals the decision of the circuit court to this Court. Having reviewed the court's opinion, the briefs of the parties and the record, we affirm.

## STANDARD OF REVIEW

KRS 67C.323(1) provides a framework for the Merit Board's review of a decision of the chief of police to terminate the employment of a non-probationary officer. Any person aggrieved by the Board's decision following such a review has a right to appeal the Merit Board's determination to the circuit court. KRS 67C.323(3)(a). The circuit court's judgment in review of such matters is subject to review by this Court. KRS 67C.323(3)(b).

The circuit court reviews the decision of the Merit Board for arbitrariness. "Basically, judicial review of administrative action is concerned with the question of *arbitrariness*." *Am. Beauty Homes Corp. v. Louisville & Jefferson Cty. Plan. & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964) (emphasis in original). If an administrative action is not supported by substantial evidence, it is arbitrary. *Id.* "Substantial evidence has been defined as evidence which 'has sufficient probative value to induce conviction in the minds of reasonable men.'" *Runner v. Commonwealth*, 323 S.W.3d 7, 10 (Ky. App. 2010) (quoting *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298 (Ky. 1972)). In reviewing for arbitrariness, the reviewing court must observe whether the questioned exercise of

authority might be infirm as an "(1) action in excess of granted powers, (2) lack of procedural due process, and (3) lack of substantial evidentiary support[.]" *Am. Beauty Homes Corp.*, 379 S.W.2d at 456.

> Our review of the circuit court determination is only for clear error.
>
> The standard guiding [the Court of Appeals] on the appeal from the circuit court is the "clearly erroneous" rule as promulgated in [Kentucky Rules of Civil Procedure] CR 52.01. [The Court of Appeals] cannot disturb the trial court's determination unless it acted clearly erroneously in the sense that its determinations were not supported by substantial evidence.

*Stallins v. City of Madisonville*, 707 S.W.2d 349, 351 (Ky. App. 1986).

If we find the circuit court's decision was not clearly erroneous, it should be affirmed. However, any appellate review of questions of law is *de novo*. *Huxol v. Daviess County Fiscal Court*, 507 S.W.3d 574, 578 (Ky. App. 2016).

## ANALYSIS

Hardin had two main complaints to the circuit court concerning the Merit Board's actions. The first complaint was that the Merit Board erred in considering materials contained in the files of the criminal case which was expunged, maintaining that the expungement prevented any use of those materials. The second complaint was that his procedural due process rights were violated when the Merit Board considered witness statements, leaving him unable to cross-

-9-

examine those witnesses. We will review the circuit court's decision as to each for clear error.

### 1. The Expunged Materials

During the Merit Board proceedings, counsel for Hardin objected to the introduction of certain documents by LMPD because they had been used or relied upon in the criminal proceedings which had been expunged. Hardin argued that any documents used in the expunged proceedings are themselves subject to the expungement order, rendering them incapable of being introduced in any other proceeding like the Merit Board hearing.

The circuit court found that the police investigations of Hardin's actions were undertaken by both the PIU and the PSU. Arguably, the court found, since the PIU reviews officer behavior for possible criminal charges, materials in the PIU file were subject to the expungement order. But it found that the contents of the PSU file were not subject to the expungement order, as the investigation by the PSU is into violations of the SOPs, and would not likely support a criminal charge.

The relevant sections of KRS 431.076 provide:

(4) An order of expungement pursuant to this section shall expunge all criminal records in the custody of the court and any criminal records in the custody of any other agency or official, including law enforcement records, but no order of expungement pursuant to this section shall expunge records in the custody of the

-10-

Department for Community Based Services. The court shall order the expunging on a form provided by the Administrative Office of the Courts. Every agency, with records relating to the arrest, charge, or other matters arising out of the arrest or charge, that is ordered to expunge records, shall certify to the court within sixty (60) days of the entry of the expungement order, that the required expunging action has been completed. All orders enforcing the expungement procedure shall also be expunged.

. . .

(6) After the expungement, the proceedings in the matter shall be deemed never to have occurred. The court and other agencies shall delete or remove the records from their computer systems so that any official state-performed background check will indicate that the records do not exist. The court and other agencies shall reply to any inquiry that no record exists on the matter. The person whose record is expunged shall not have to disclose the fact of the record or any matter relating thereto on an application for employment, credit, or other type of application.

Hardin insists that the circuit court erred. He argues that the statute requires that an expungement order necessitates the purging of all documentary evidence which had been presented in the expunged proceeding, even if those materials were available from other sources. The Merit Board points to the language of KRS 431.079(3):

For the purposes of this section, KRS 431.073, 431.076, and 431.078, "expungement" means the removal or deletion of records by the court and other agencies which prevents the matter from appearing on official state-performed background checks.

-11-

The Merit Board insisted to the circuit court that it was only the documents generated in the expunged court proceeding itself that were required to be deleted or removed. Therefore, any evidence adduced from another source and introduced during the conduct of the now-expunged proceeding is not touched by the expungement order. The circuit court agreed with the Merit Board. We find that this determination was proper and not clearly erroneous.

We determine that the statute clearly delineates those "records" which must be expunged. In discerning the meaning of a statute, we must look to the common, plain meaning of the words chosen by the legislature.

> It is this Court's duty when interpreting statutes to give effect to the General Assembly's intent, but "no rule of interpretation . . . require[s] us to utterly ignore the plain . . . meaning of words in a statute." In fact, "[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source." We "ascertain the intention of the legislature from words used in enacting statutes rather than surmising what may have been intended but was not expressed." In other words, we assume that the "[Legislature] meant exactly what it said, and said exactly what it meant." Only "when [it] would produce an injustice or ridiculous result" should we ignore the plain meaning of a statute.

*Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (citations omitted).

The language of this statute is clear. The expungement statute speaks of the records of the court or other agencies which might appear "on official state-

-12-

performed background checks." This does not contemplate all of the documents Hardin complains of having been considered by the Merit Board. Many of the documents were not generated through the criminal prosecution, but rather during the PSU investigation.

During the multiple investigations of Hardin's actions on January 22 and January 27, several files were created. Within LMPD, two investigations were ongoing: one by the PIU and the other by the PSU. The PIU investigates allegations of criminal activity by officers. When the allegation against an officer concerns a failure to follow departmental policy, the PSU conducts the investigation. The two units can conduct concurrent investigations, which occurred when the allegations against Hardin arose. It is the introduction of materials from both of these investigations to which Hardin objected at the Merit Board hearing. His argument is that as some of the materials were introduced during the expunged court proceedings as evidence, they were subject to the expungement order and therefore could not be introduced, even though they arose from a source independent of the expunged proceedings.

Hardin's interpretation of the statute is not reasonable and requires us to interpret a statute such as to reach an absurd result. KRS 431.076(4) clearly delineates that the only records which are required to be eliminated from all records are those "relating to the arrest, charge, or other matters arising out of the

-13-

arrest or charge[.]" Nothing in the PSU file could possibly qualify as falling under this definition as nothing in the PSU file, relating to violation of policy, would relate to an arrest or charge. But the PIU file might contain materials which were presented as evidence in the criminal case, which would be relating to the arrest or charge. The circuit court made this delineation, expressly finding that PSU files could not possibly relate to the arrest or charge, but that the PIU files possibly could.

The circuit court noted that the PIU file was incorporated into the PSU file prior to the expungement order. The court, having found that only the PIU files could possibly contain materials subject to the expungement order, then conducted a harmlessness review to determine if any harm might have occurred by the inclusion of any of the PIU files in the PSU.

We hold that best practice would be for any of the materials subject to an expungement order be redacted from any file, such as the PIU file, prior to presentation to an administrative hearing body, such as the Merit Board. Even so, the court found that the only charge before the Merit Board to which any of the PIU specific contents were relevant was the violation of SOP 5.1.2, and that charge was determined to be meritless by the Board. Thus, to the extent that the Merit Board utilized materials subject to the expungement order, that error was harmless, and we find that the circuit court properly so found.

-14-

## 2. The Witness Statements

Hardin argued to the circuit court that the witness statements were not properly before the Merit Board and the use of those statements at the hearing violated his due process rights. The circuit court held that because the witness statements were of "minimal assistance" to the Board, and because unpublished caselaw supported a finding that the use of the statements was not improper, the actions of the Merit Board were proper.[2] We do not find that holding to be erroneous.

Hardin asserted to the circuit court that his right to confront his accusers was violated when the Merit Board relied upon witness statements in reviewing Chief Conrad's termination decision, rather than requiring live testimony so Hardin could effectively cross-examine the witnesses. The circuit court held that Hardin's rights to due process were not violated, as hearsay is admissible in administrative proceedings.[3] Further, the court reasoned, the Merit

---

[2] *Ca'Mel v. Louisville/Jefferson County Metro Gov't Police Dep't*, No. 2013-CA-001988-MR, 2015 WL 226088 (Ky. App. Jan. 16, 2015), and *Shaw v. Louisville/Jefferson County Metro Gov't Police Dep't*, No. 2017-CA-000867-MR, 2018 WL 3954278 (Ky. App. Aug. 17, 2018).

[3] Hearsay evidence may be admissible, if it is the type of evidence that reasonable and prudent persons would rely on in their daily affairs, but it shall not be sufficient in itself to support an agency's findings of facts unless it would be admissible over objections in civil actions. KRS 13B.090(1).

Board did not cite the witness statements in its findings and the statements were of only minimal assistance to the Board.

We find no clear error with the circuit court's reasoning. The confrontation clause promises only that those facing criminal accusations have a right to confront those who provide testimony against him or her.

> The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford*,[4] after reviewing the Clause's historical underpinnings, we held that it guarantees a defendant's right to confront those "who 'bear testimony'" against him. 541 U.S., at 51, 124 S. Ct. 1354.

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309, 129 S. Ct. 2527, 2531, 174 L. Ed. 2d 314 (2009).

However, we do note that KRS 67C.325 does guarantee an officer "an opportunity to confront his or her accusers[.]" Had the circuit court not found any admission of the statements to be harmless, our review might end differently. The circuit court made clear in its ruling that the Merit Board made no notation to the statements in its findings, and that the officers specifically noted as having

---

[4] *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

provided evidence in the findings provided live testimony and were subject to cross-examination.

The circuit court gave due consideration to the argument of Hardin concerning whether the admission of the witness statements violated his due process rights. It gave due consideration to the import of the witness statements to the Merit Board, found them to have been of little consequence, and therefore its determination that Hardin's due process rights were not violated was not clearly in error.

## CONCLUSION

The "residuum rule" establishes that the "findings of an administrative agency will be upheld despite its partial reliance upon incompetent evidence if it also had before it competent evidence which by itself would have been legally sufficient to support the findings." *Haste v. Kentucky Unemployment Ins. Comm'n*, 673 S.W.2d 740, 740-41 (Ky. App. 1984) (citing *Big Sandy Community Action Program v. Chaffins*, 502 S.W.2d 526, 530 (Ky. 1973)).

We find that the Jefferson Circuit Court thoroughly reviewed the record before it and its ruling was supported by substantial evidence and thus not clearly erroneous. We affirm the decision upholding the Merit Board's determination to terminate Hardin's employment as a Louisville Metro Police officer.

ALL CONCUR.


BRIEFS FOR APPELLANT:

David Leightty
Louisville, Kentucky

BRIEF FOR APPELLEE
LOUISVILLE METRO POLICE
MERIT BOARD:

Mark W. Dobbins
Kathleen M.W. Schoen
Louisville, Kentucky

BRIEF FOR APPELLEE
LOUISVILLE/JEFFERSON
COUNTY METROPOLITAN
GOVERNMENT:

Mitchel T. Denham
Erin M. Shaughnessy
Olivia Oney
Louisville, Kentucky